UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SYLVIA MENA,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 1:11-cv-1315

Honorable Robert Holmes Bell

**REPORT AND RECOMMENDATION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB). On October 31, 2008, plaintiff filed her application for benefits alleging an onset of disability almost a decade earlier, February 15, 1999. (A.R. 170-76). Her disability insured status expired on December 31, 2004. Thus, it was plaintiff's burden to submit evidence demonstrating that she was disabled on or before December 31, 2004. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claim for DIB benefits was denied on initial review. (A.R. 72-76). On May 19, 2011, she received a hearing before an administrative law judge (ALJ) at which she was represented by counsel (ALJ). (A.R. 34-69). On May 27, 2011, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 16-25). On November 10, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claim for DIB benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ did not properly apply 20 C.F.R. § 404.1565 in determining that plaintiff was able to perform past work as a receptionist;

2. The ALJ did not comply with controlling Sixth Circuit case law in applying the treating physician rule to the opinions of Julia Spalding, M.D.; and

3. The ALJ failed to provide a sufficient explanation to support his factual finding regarding plaintiff's credibility;

(Plf. Brief at iii, docket # 16). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833

(6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on February 15, 1999, and continued to meet them through December 31, 2004, but not thereafter. (A.R. 18). Plaintiff had not engaged in substantial gainful activity on or after February 15, 1999. (A.R. 18). As of her date last disability insured, plaintiff had the severe impairments of "osteoarthritis of the right shoulder,[1] degenerative disc disease, and left sciatica."

---

[1] The ALJ likely intended a reference to plaintiff's left shoulder rather than her right shoulder, because records from her treating surgeon establish that her severe shoulder impairment during the disability insured period at issue involved her left shoulder. (A.R. 440-45). Any oversight by the ALJ in this regard was so trivial that the parties elected not to mention it in their briefs.

(A.R. 18). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 19). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) specifically, the claimant is able to occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. The claimant is able to stand and/or walk about six hours in an eight-hour workday and the claimant is able to sit for a total of six hours in an eight-hour workday. The claimant has no limitation in pushing and/or puling, other than as shown for lift and/or carry. The claimant is limited to occasionally climbing ramps, stairs, ladders, ropes and scaffolds. Furthermore, she is limited to occasional balancing, stooping, kneeling, crouching and crawling. She is limited to occasional overhead reaching with the left arm. She should avoid all exposure to fumes, odors, dusts, gasses and poor ventilation.

(A.R. 19). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 19-23). The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because, through her date last insured, she was capable of performing her past relevant work as a receptionist as that job is generally performed in the national economy and as plaintiff performed it. (A.R. 23).

Alternatively, the ALJ found that plaintiff was not disabled at step 5 of the sequential analysis. Plaintiff was 42-years-old as of her date last disability insured. Thus, at all times relevant to her claim for DIB benefits, plaintiff was classified as a younger individual. (A.R. 24). Plaintiff has a limited education and is able to communicate in English. (A.R. 24). The transferability of job skills was not material to a disability determination. (A.R. 24). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were more than 22,000 jobs in the region that the hypothetical person would be capable of performing.

(A.R. 62-66). The ALJ found that this constituted a significant number of jobs. Using Rule 202.18 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 24-25).

**1.**

Plaintiff argues that the ALJ did not properly apply 20 C.F.R. § 404.1565 in determining that she was able to perform past work. (Plf. Brief at 28-29). Plaintiff testified that she worked as a receptionist for an insurance company from December 2005 to March 2006. (A.R. 40). She argues that the ALJ erred in treating this work as past relevant work, because it did not rise to the level of substantial gainful activity. Defendant makes no attempt to engage this argument. The Commissioner simply offers a conclusion that the ALJ "made the appropriate finding [at step 4] that plaintiff could perform her prior work as a receptionist." (Def. Brief at 20, docket # 20). I find that the portion of the ALJ's decision finding that plaintiff was not disabled because she was capable of performing past work as a receptionist is not supported by substantial evidence. Plaintiff's work as a receptionist never reached the threshold for substantial gainful activity.

"Generally, 'past relevant work' is defined as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.' 20 C.F.R. § 404.1560(b)(1). 'Substantial gainful activity' is in turn defined as work that involves 'significant physical or mental activities' done for 'pay or profit.' 20 C.F.R. § 404.1572(a)-(b)." *Wright-Hines v. Commissioner*, 597 F.3d 392, 395-96 (6th Cir. 2010); *see* 20 C.F.R. § 404.1565(a) ("We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity."). Plaintiff received wages for the work she performed as a receptionist in 2005 and 2006. (A.R. 183-

86). The substantial gainful activity threshold in 2005 was $830 per month, and in 2006 the threshold was $860 per month. *See* http://www.socialsecurity.gov/OACT/COLA/sga.html (last visited Jan. 17, 2013). The most detailed statement regarding this work appears on page 186 of the administrative record:

> I was hired by Bankers Casualty and Life to answer phones and make appointments. I was paid as an independent contractor so I received a 1099 instead of a W2. I worked 12/2005 and earned $555.00. I worked January 2006-February 2006 and earned $1109.00. I stopped work on 3/1/2006.

(A.R. 186; *see also* A.R. 183). Plaintiff's work as a receptionist never reached the monthly earnings threshold for substantial gainful activity. The portion of the ALJ's opinion finding that plaintiff was not disabled because she was capable of performing past relevant work as a receptionist is not supported by substantial evidence.

**2.**

Plaintiff argues that the ALJ committed reversible error in his application of the treating physician rule to the opinions of Julia Spalding, M.D. (Plf. Brief at 15-20). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the

requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not

necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The ALJ gave careful consideration to the medical records generated during the period at issue: February 15, 1999, through December 31, 2004.[2] (A.R. 20-23). The record shows that plaintiff stopped working as a production molder at Auto Air Composites, Inc. in 1999 because chemical fumes or other material that she was exposed to at work caused occupational rhinitis. Her condition improved when the work-related exposure ceased. Plaintiff's visits with Dr. Spalding, her family physician, became very infrequent, with multiple gaps in treatment of "over a year." (A.R.

---

[2]The majority of the medical evidence that plaintiff presented in support of her claim for DIB benefits is dated years after her date last disability insured. Documents generated after expiration of plaintiff's disability insured status are "minimally probative" and are considered only to the extent that they illuminate a claimant's health before the expiration of her insured status. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002) ("Evidence relating to a time period outside the insured period is only minimally probative.").

20-21). The ALJ's decision easily withstands scrutiny when the opinions provided by Dr. Spalding are considered within the context provided by the medical record summarized herein.

On December 8, 1998, allergist James Saker, M.D., examined plaintiff on a referral from Dr. Spalding. (A.R. 632). He subjected plaintiff to a wide range of potential allergens and the "only positives were weak reactions to cat and dog of equivocal significance." (A.R. 632). Plaintiff's pulmonary function test results were normal. (A.R. 632). Plaintiff asserted that there was a relationship between her upper respiratory symptoms and the chemicals that she was exposed to at work. She stated that she felt better when she was on maternity leave in 1997. (A.R. 633). Dr. Saker offered a diagnosis of occupational rhinitis and advised Dr. Spalding to place plaintiff on a "2 to 4 week medical leave." (A.R. 633).

On February 9, 1999, Dr. Saker wrote the following letter to Dr. Spalding:

> Mrs. Evans[3] was examined on January 25th the morning before going back to work and after having not been at work since 12-23-98. Findings were normal. She was re-examined the same day after leaving work and again on January 27th before going to work and after being at work. There is no question that she was objectively, significantly and progressively worse in terms of nasal findings secondary to her work exposure. She has in my opinion unequivocal occupational rhinitis and her employer has been so advised to reassign her to a different work area. If this is not possible or does not result in symptom control, the patient has no other option if she wishes to remain well but to sever her employment.

(A.R. 634).

On February 22, 1999, Dr. Spalding stated that plaintiff had "occupational rhinitis" which prevented her from returning to work as a factory production molder: "Sylvia is not able to work – permanent. Dx: Occupational Rhinitis." (A.R. 531).

---

[3]Plaintiff changed her name from Evans to Mena sometime between July 23, 2009 (A.R. 78) and October 26, 2010. (A.R. 108, 553). Plaintiff testified that she was not married (A.R. 39), and her mother, Ramona Mena, gave testimony in support of her claim for DIB benefits. (A.R. 38, 59-60).

On April 1, 1999, allergist Martin Hurwitz, M.D., summarized the chemicals that plaintiff was exposed to at work as a production molder at Auto Air Composites. (A.R. 636; *see also* A.R. 209, 632). Plaintiff reported feeling better during the periods she was off work. She related that she had never had a serious illness, and that her only hospitalizations had been related to her pregnancies. She had daughters ages 19 and 16, and sons ages 5 and 3. Her physical examination was unremarkable. Dr. Hurwitz expressed his opinion that the skin rash that plaintiff reported was probably a contact allergy to some of the materials she was working with. Her complaints of nasal congestion and other sensations about the nose were "primarily irritant other than allergic." Dr. Hurwitz indicated that plaintiff's complaints could be addressed through appropriate protective gear. (A.R. 637-38).

On June 3, 1999, Dr. Spalding noted that the objective evidence showed that plaintiff's condition had improved. Her nose was "red and inflamed," but it was not as bad as it had been on an earlier visit. Plaintiff made it clear that she had decided that her symptoms prevented her from working at Auto Air Composites as a production molder:

> S: Sylvia Evans returns. She has been off work until Tuesday, June 1. She went back to work and immediately began having symptoms despite having a full mask and gloves and a respirator and a long-sleeved shirt. She felt that she could not stay at work. She had to leave. She felt light-headed, weak, dizzy, her ear/nose/throat were burning [and] her brain was burning. She saw Dr. Telles on June 1 and she went to see Dr. Saker on June 2, and another allergist specialist that the plant or Workers' Compensation wanted her to see.
>
> O: On exam today, Sylvia's nose is red and inflamed, but not as bad as previous. She feels the symptoms are intolerable and despite all kinds of protective gear, she still has a lot of symptoms.
>
> A/P: At this point, my advice to her is that she seems unable to work there. I am not an expert in rhinitis caused by chemical exposure, but every time she goes to work, she has to leave. I do not see any way out of this. What she ultimately does from this

> point is her decision. If she can get a new job or if she feels like she wants to proceed with Workers' Compensation. I am not sure what to tell her. I did tell her that I was not an expert. This case was the first case for me. I wrote a note stating that she had more symptoms at work. It is her decision. She tells me that she cannot continue to work there.

(A.R. 373).

On June 10, 1999, Dr. Saker wrote a letter to Dr. Telles criticizing the protective gear supplied by plaintiff's employer. Saker stated that effective June 2, 1999, he had placed plaintiff "on permanent work leave." (A.R. 635).

On August 14, 1999, plaintiff's sinus CT scan returned normal results. (A.R. 429). In September 1999, a chiropractor offered an opinion that plaintiff's back pain prevented her from working. (A.R. 533). On November 30, 1999, plaintiff reported to emergency room physicians that she had been a driver wearing a seat belt when her car had been hit in the rear by another car. She suffered some contusions, but maintained a full range of motion in her neck and had no neurological deficits. (A.R. 410-11, 451-65). X-rays taken of her cervical spine returned normal results. (A.R. 427-28).

Plaintiff testified that she had problems with her lower back and left sciatica after she suffered a work-related injury: "I got injured at work lifting molds and the mold fell on me." (A.R. 43). On October 18, 2000, Dr. Spalding noted that she had not seen plaintiff "for over a year." (A.R. 372). Plaintiff's primary complaint was back pain. Her chest x-rays were normal. (A.R. 390). Her deep tendon reflexes were intact and symmetrical. Her strength was normal. Dr. Spalding offered a diagnosis of a bulging disc with left sciatica and gave plaintiff a prescription for Vioxx. Dr. Spalding noted that plaintiff "feels that she has developed asthma and has a cough from exposure

at the plant. She takes Allegra D for it and it seems to help her." (A.R. 372). On December 16, 2000, Dr. Spalding treated plaintiff's left eye abrasion. (A.R. 446).

Plaintiff returned to Dr. Spalding on March 21, 2002. Plaintiff stated that she had depression and anxiety stemming from the loss of her job and having a "good friend [] decapitated in a publicized murder." (A.R. 371). Plaintiff looked depressed. Her chest was clear. Her deep tendon reflexes and "sensation [were] intact and symmetrical." (A.R. 370). Dr. Spalding gave plaintiff prescriptions for Klonopin and Paxil. (A.R. 370). Plaintiff was encouraged to increase her level of physical activity. Dr. Spalding stated, "At some point, it may be good for her to go back to counseling." (A.R. 370). On April 11, 2002, Dr. Spalding discontinued the Klonopin because plaintiff complained of fatigue, but she continued the Paxil prescription. (A.R. 370).

In May 2002, plaintiff reported to Paula Therrien, M.D., that she was "starting to feel a little better on the Paxil." (A.R. 369). In June 2002, x-rays of plaintiff's cervical spine were normal. (A.R. 428). Her MRI showed posterior disc osteophyte ridging at C4-5 and "mild" degenerative disc disease at C5-6 and C6-7. (A.R. 388-89, 424-25). In October 2002, plaintiff's pulmonary function studies and x-rays returned normal results. (A.R. 390, 392, 412). X-rays taken of plaintiff's left elbow indicated "mild" degenerative arthritis. (A.R. 387).

On June 20, 2003, plaintiff reported left shoulder pain. Dr. Therrien found that she had a full range of motion and there was no redness or warmth. She was in no acute distress. "Distally she ha[d] good grip strength, sensation, pulses, and reflexes." (A.R. 368). Her lungs were "clear anteriorly and posteriorly with no accessory muscle use." (A.R. 368). Dr. Therrien offered a diagnosis of left AC joint swelling. (A.R. 368). X-rays of plaintiff's shoulders were "unremarkable." (A.R. 386). On July 11, 2003, plaintiff's left shoulder MRI indicated inflammatory

changes involving the acromioclavicular joint with some extension into the distal clavicle. (A.R. 384-85, 422-23, 516-17).

On July 21, 2003, Kathleen Buran, M.D., an orthopedic surgeon, examined plaintiff's left shoulder on a referral from plaintiff's primary care physician, Dr. Therrien. (A.R. 481). Dr. Buran found that plaintiff's left shoulder was "neurovascularly intact." She had a full range of motion and no atrophy. X-rays did not reveal any significant degenerative changes. Plaintiff appeared to have "some problems with impingement secondary to the AC joint." Dr. Buran recommended a course of physical therapy. She noted that if plaintiff's shoulder did not improve, it would be appropriate to "consider injections to the AC joint or possibly surgery." (A.R. 481). Plaintiff attended two physical therapy sessions, then elected to go forward with surgery. (A.R. 505).

On August 18, 2003, a physician's assistant conducted a pre-operative physical. Plaintiff had "no significant past medical history." The only medication she was taking was "Zyrtec on a p.r.n. basis." Plaintiff denied any shortness of breath, difficulty breathing, chest pain, headaches, syncope. Her cardiovascular examination was normal. (A.R. 367).

On August 20, 2003, Dr. Buran conducted the arthroscopic surgery on plaintiff's left shoulder. (A.R. 440-45, 483-87). On August 21, 2003, the treating surgeon noted that she was "doing well" (A.R. 479). Plaintiff made a rapid recovery. The MRI of plaintiff's shoulder in October 2003 showed no evidence of a rotator cuff tear. There was no evidence of a deltoid muscle rupture or tear. Postoperative changes were noted and there was a rather large fluid collection in the subacromial subdeltoid area. It did not appear that there was significant marrow edema of the acromioclavicular joint. (A.R. 420-21, 514-16). On November 20, 2003, Dr. Buran indicated that

plaintiff was "doing quite well." She had a full range of motion. Dr. Buran stated that he would see plaintiff on a "PRN basis." (A.R. 476).

Plaintiff saw Dr. Spalding on two occasions in 2004. On February 23, 2004, Dr. Spalding had plaintiff come into her office because she had received paperwork from the Michigan Works program. (A.R. 366). Dr. Spalding stated that plaintiff had "left shoulder pain with AC joint arthritis and a chronic rotator cuff injury[,] cervical degenerative disc disease, especially at C5/6 and 7[,] lumbar disease[, and] left sciatica." (A.R. 366). Further, she noted that plaintiff "believed that she ha[d] short-term memory loss related to chemical exposure" and "sensitiv[ity] to many chemicals." (A.R. 366). Dr. Spalding completed the Michigan Works form and concluded that plaintiff was capable of performing 20 hours per week of competitive employment without further explanation. (A.R. 563). She stated that plaintiff could walk for up to 2 hours continuously and occasionally up to 6 hours. Plaintiff could sit for up to six hours. (A.R. 562).

On May 17, 2004, plaintiff returned to Dr. Spalding and reported pain in her right great toe. She stated that three days earlier she "did a lot of gardening" and now the discomfort in her toe made it difficult for her to walk. Dr. Spalding found no obvious inflammation. She offered a diagnosis of "Sprain of the right great MTP joint from gardening." (A.R. 365). Dr. Spalding recommended that plaintiff take Extra Strength Tylenol and soak her foot up to twice a day. If the symptoms persisted, the matter could be reevaluated. Plaintiff related that she was "in the process of being evaluated by Social Security" and that she felt like she had some "anxiety depression issues." (A.R. 365). Dr. Spalding gave plaintiff a prescription for Wellbutrin. (A.R. 365). Plaintiff's disability insured status expired on December 31, 2004.

At some point during the period shortly after plaintiff's disability insured status had expired, she obtained a prescription for Cymbalta. On July 20, 2005, she reported that Cymbalta had greatly reduced her generalized musculoskeletal pain. (A.R. 364). The x-rays taken of plaintiff's lumbosacral spine on June 9, 2005 were normal. (A.R. 383).

Plaintiff argues: "There is certainly no question that Dr. Spalding was of the opinion that the claimant could not perform her past relevant employment or any future substantial gainful employment. This is due to the substantial limitations that the claimant would [] require[] contained on pages 543 through 548 of the trial [sic] record as well as throughout the record in its entirety." (Plf. Brief at 15-16). Plaintiff's reliance on the "CHRONIC PAIN Residual Functional Capacity Questionnaire" that Dr. Spalding signed in 2009 (A.R. 543-48) is misplaced. This document and similar documents she signed in 2008 (A.R. 564) and 2010 (A.R. 622) are not relevant because they describe plaintiff's condition years after her date last disability insured. Further, the issue of disability is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Warner v. Commissioner*, 375 F.3d at 390. A physician's statement that the claimant is disabled or unable to work is not a medical opinion. *Dunlap v. Commissioner*, 509 F. App'x 472, 476 (6th Cir. 2012).

Plaintiff argues that Dr. Spalding "concluded on February 22, 1999 that the claimant [was] not able to work permanently under a diagnosis of occupational rhinitis." (Plf. Brief. at 18). This argument ignores the context in which Dr. Spalding made her statement. Dr. Spalding indicated that plaintiff could not work as a production molder at Auto Air Composites, because it caused her to suffer from "occupational rhinitis." (A.R. 531). The record shows that plaintiff experienced few, if any, rhinitis problems when she was not exposed to chemicals at work. The ALJ's factual finding regarding plaintiff's RFC included significant environmental restrictions which

precluded work as a factory production molder. (A.R. 19, 23-24). Dr. Spalding did not assert that plaintiff's occupational rhinitis stemming from her factory work prevented her from performing other types of work. (A.R. 373). Further, assuming that Dr. Spalding had stated that plaintiff was unable to work, the statement would have been entitled to no weight because the issue of disability is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1), (3).

The defining characteristic of plaintiff's claim for DIB benefits was that she was claiming disability during a period in the remote past. Understandably, when the ALJ wrote his opinion, his primary focus was on the medical evidence from the period at issue, February 15, 1999, through December 31, 2004. (A.R. 20-23). The ALJ's opinion did not include a discussion of RFC questionnaires that Dr. Spalding signed in 2008, 2009, and a note written in 2010 in which she stated that plaintiff was "unable to work at any job." (A.R. 543-48, 564, 622). The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."[4] *Smith v. Commissioner*, 482 F.3d at 875. The case law has not yet evolved to a point where it can be determined with certainty whether a technical violation occurs when RFC questionnaires from a treating physician unrelated to the disability insured period at issue are not discussed in the ALJ's opinion. However, assuming that the ALJ committed a technical violation of the procedural rule by not providing an explicit statement that the aforementioned materials were being disregarded because they did not address

---

[4]The Social Security Administration assigned this case to an ALJ in Tulsa, Oklahoma. (A.R. 34-36). It is unlikely that he was familiar with the Sixth Circuit's decisions recognizing the procedural right to a statement of reasons. Nonetheless, the appellate review by this court must be conducted in accordance with Sixth Circuit precedent.

plaintiff's condition during the period at issue, the error was harmless.[5] The Sixth Circuit has held that harmless error occurs where the Commissioner has met the goal of 20 C.F.R. § 404.1527(c)(2). *See Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011). Here, the hearing transcript makes pellucid that everyone involved in this case knew that plaintiff's date last disability insured was critical:

> ATTY: We have, Judge. We have had a number of meetings [and] I don't think we need to go with anything on the record. She is aware that LDI, last date insured, is December 31, 2004.
>
> ALJ: All right. Very well then. Ms. Mena, we are going to ask you some questions. Questions regarding your state of health, your medical circumstances, and your medical condition and your ability to perform certain work-related activities. Now, we are going to be shining the spotlight back to a portion of your life that was around the alleged onset date, which is 1999. That is when you alleged you became disabled. And, we have the date last insured, December 31, 2004. So, those are the important periods of time, because we need you to be disabled before the date last insured. Sort of like having automobile insurance. If your automobile insurance expired in December 31, 2004 and you had an accident a year later, the insurance company is going to say, "No. You are not covered." And that is what we will be looking at. We want the Title II application and we are going to look at all your medical circumstances and all of your medical condition, but we want to focus on that period of time. Because in order to qualify for Title II benefits, you need to be disabled before the date last insured.

(A.R. 36-37). I find that the ALJ's failure to burden his opinion with a discussion of irrelevant material, which did not purport to evaluate plaintiff's medical condition at any time close to the disability insured period at issue, was utterly harmless.

---

[5] The Supreme Court has cautioned appellate courts against becoming "impregnable citadels of technicality." *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009). "No principle of administrative law or common sense requires [this court] to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006)(quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)).

**3.**

Plaintiff argues that the ALJ failed to properly analyze her credibility. Specifically, she argues that the ALJ failed to provide a sufficient explanation to support his factual finding regarding her credibility. (Plf. Brief at 10-15). Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues. *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The court does not make its own credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). The court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard. This is a "highly deferential standard of review." *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones*, 336 F.3d at 476. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773; *accord White v. Commissioner*, 572 F.3d 272, 287 (6th Cir. 2009); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993).

Plaintiff testified on May 19, 2011. She claimed a February 15, 1999 onset of disability[6] and her date last disability insured was December 31, 2004. (A.R. 36). The ALJ found that plaintiff's testimony regarding her functional limitations during the remote period at issue was not fully credible. (A.R. 19-23). Plaintiff's medical records did not support her claims regarding the intensity, persistence, and limiting effects of her symptoms. (A.R. 20). Objective tests showed relatively mild degenerative disc disease, and her treating surgeon documented the positive results stemming from the arthroscopic surgery performed on plaintiff's left shoulder in 2003. (A.R. 23). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's credibility finding is supported by substantial evidence, and the ALJ gave an adequate explanation why he found that plaintiff's testimony was not fully credible. *See Rogers v. Commissioner*, 486 F.3d 234, 247-49 (6th Cir. 2007).

**4.**

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence. (Plf. Brief at 21-28). RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3). RFC is the most, not the least, a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007). The ALJ found that through her date last disability insured, plaintiff retained

---

[6]Plaintiff settled her workers' compensation claim against Auto Air Composites in 2000 for $84,000. (A.R. 47, 50, 177). She attributed her substantial delay in filing an application for DIB benefits to bad advice from the attorney who had represented her in that matter. (A.R. 47). Plaintiff filed an application for DIB benefits in 2004 which was denied on initial review, and she did not seek further administrative review of that claim. (A.R. 48-49).

the RFC for a limited range of light work. (A.R. 28). I find that the ALJ's factual finding regarding plaintiff's RFC is supported by more than substantial evidence.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: January 22, 2014         /s/ Joseph G. Scoville
                                United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).